IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 23-80654-CV-MIDDLEBROOKS

AMERICAN REGISTRY, LLC,

      Plaintiff,

vs.

CASTLE CONNOLLY MEDICAL LTD.,

      Defendant.

_____/

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED
COMPLAINT UNDER RULES 12(b)(1) AND 12(b)(6) [DE 51]**

American Registry, LLC ("**American Registry**" or "**Plaintiff**"), by and through the undersigned counsel, hereby files its response in opposition to the Motion to Dismiss Plaintiff's Second Amended Complaint Under Rules 12(b)(1) and 12(b)(6) (the "**Motion to Dismiss**") [DE 51] filed by Castle Connolly Medical Ltd. ("**Castle Connolly**" or "**Defendant**"). In support thereof, Plaintiff attaches the Declaration of Michael Moran as **Exhibit A** ("**Moran Dec.**"), and further states as follows:

## I.   PRELIMINARY STATEMENT

1. The instant case before the Court is a simple breach of contract where Plaintiff has sufficiently pled that the Defendant breached the parties' Recognition Program Strategic Partnership Agreement (the "**Partnership Agreement**" or "**Agreement**") by, *inter alia*, disclosing Plaintiff's confidential information to third-parties, specifically Wright's Media, Inc. ("**Wright's Media**"). Defendant is taking the unsupportable position that, at this stage of the proceedings, without any discovery being provided by Defendant, the Plaintiff has to prove its case on the pleadings.

2. If the Court adopts this position, then most Defendants would avoid producing the discovery that would prove Plaintiff's cases. Indeed, if Defendant didn't share any of the confidential and proprietary information with Wrights Media that the Plaintiff provided to Defendant over the course of their business relationship, then Defendant should have sworn to that and/or answered "none" to disclosure of any such document or information. Instead, Defendant has filed a Motion to Stay in order to hide the disclosure from Plaintiff and this Court, as Plaintiff discussed at length in its Response in Opposition [DE 54] to Defendant's Motion to Stay [DE 52].

3. Defendant didn't swear to the foregoing because it did just the opposite when it handed Plaintiff's entire business operational, confidential playbook over to Wrights Media.

4. In Defendant's current attempt to dismiss Plaintiff's claim[1], the Defendant has (i) simply denied Plaintiff's well-pled allegations and good faith allegations of its damages stemming from Defendant's breach, (ii) introduced, for the first time since the inception of this lawsuit back in April 13, 2015, a document that purports to amend the Agreement, (iii) invited the Court to look outside the pleadings to rule on its Motion, and (iv) relied on readily distinguishable legal authorities to support dismissal of the SAC **with prejudice**.

5. As detailed below, Defendant's Motion to Dismiss must be denied because:

   a) Plaintiff has established the jurisdictional minimum in controversy for diversity jurisdiction as Plaintiff has alleged that its damages stemming from Defendant's breach of the Agreement, include without limitation:

      (i) Lost profits that Plaintiff properly alleged to be a good faith sum of $375,000/year, [DE 45, p. 10], upon its information and belief that Defendant's sales (with Wright's Media) are commensurate with the Plaintiff's sales of on average of approximately $750,000.00/year associated with the Defendant's award/recognition display program. [Moran Dec. ¶18]. Plaintiff cannot know the exact amount because Defendant has not responded or produced any documents in discovery related to this issue.

      (ii) Other expectational and consequential damages in excess of $75,000, which include a 5% royalty fee that Plaintiff has computed to be approximately $37,500/year [Moran Dec. ¶¶19–20]; and

      (iii) To the extent that the Court considers the extrinsic document that Defendant attached to its Motion that purports to limit the Plaintiff's recovery to "**the greater of** the amounts paid or payable under the Agreement by [Plaintiff] in the [12] months preceding the date upon which" Plaintiff's claim arose "or [$75,000]" [DE 51-1] (emphasis added), Plaintiff's damages would nonetheless be approximately $170,000 for payments made by Plaintiff to Defendant under the Agreement in 2021 or approximately $150,000 for payments made in 2020 [Moran Dec., ¶¶23–24].

---

[1] On August 23, 2023, the Court entered an order granting Defendant's motion to dismiss Plaintiff's Amended Complaint dismissing Plaintiff's patent claims for improper venue and granting Plaintiff leave to amend its breach of contract claim [DE 44]. On August 30, 2023, Plaintiff filed its Second Amended Complaint (the "**SAC**") in this District [DE 45] pursuant to the mandatory forum selection clause in the subject Agreement [DE 45-1] that specifically states that disputes between the parties arising out of the Agreement "**shall**" be brought in "Palm Beach County" and further provides that both parties "waive" any argument to the contrary.

    b) Plaintiff has sufficiently pled the following allegations to set forth a breach of contract claim against the Defendant to overcome a motion to dismiss:

        (i) That pursuant to the Agreement between the parties [DE 45,¶23], Plaintiff disclosed its confidential and proprietary information and business operational information[2] to the Defendant which, included without limitation, Plaintiff's confidential sales and marketing [DE 45, ¶16], Plaintiff's entire method and process for designing the physical recognition items, [DE 45, ¶16], sales results, [DE 45, ¶18], Plaintiff's proprietary concepts, research results, internal business plans, sales techniques, and customer lists [DE 45, ¶24], that Plaintiff, "through significant investment of time and money…had crafted, developed and refined for its business…based upon years of experience and thorough market research to offer and sell the customized award displays." [DE 45, ¶16]. *See also* [Moran Dec., ¶¶6–7, 8, 12];

        (ii) That Defendant breached the Agreement by disclosing such confidential information and business operations to a third-party (namely Wright's Media) [DE 45, ¶35] because, based upon Plaintiff's years of knowledge and experience in this business, that is the only *plausible* explanation for Wright's Media to produce a nearly identical physical recognition/award display for the Defendant in such a short period of time following the termination of the parties' partnership [DE 45, ¶¶30–34]; [Moran Dec., ¶¶16–17]; and

        (iii) That Plaintiff has suffered damages (detailed above) as a result of the Defendant's breach of the Agreement [DE 45, ¶36].

6. Consequently, Defendant's Motion should be denied, and Defendant should be required to file its answer to the SAC and respond to discovery that has been pending since June 12, 2023, so that this case can proceed in an orderly fashion without any further delay on its merits.

## II. BACKGROUND

7. American Registry and Castle Connolly entered into the Agreement on or about November 2, 2017. [DE 45, ¶11]; [DE 45-1]. As a result of this Agreement, Plaintiff developed and implemented Defendant's **entire** physical awards/recognition display program (*i.e.*, the plaques) to offer its award recipients (mainly doctors recognized by Castle Connolly) to purchase, which Defendant **never** had

---

[2] Pursuant to the Confidentiality provision of the Agreement, Defendant agreed to "maintain as confidential and not disclose to any outside party all confidential and/or proprietary documents and any and all non-public information relating to this Agreement and to the business and operations of the [Plaintiff] to which [Defendant] gained access pursuant to or as a result of this Agreement," which the Agreement defined as the "Confidential Information." [DE 45-1].

prior to this Agreement with the Plaintiff. [DE 45, ¶¶11–13]. Indeed, as Plaintiff alleged in the SAC, all that the Defendant had to offer to its award recipients of "Top Doctor" was, for a *nominal* fee, a profile highlight on an upcoming edition of a printed magazine—**that's it**. [DE 45, ¶ 13]. Plaintiff's development and production of the foregoing resulted in millions of dollars in sales and profit for the Defendant. [DE 45, ¶ 13].

8. Significantly, in all of Defendant's motions, declarations, and/or other documents presented, Defendant has never rebutted these two essential facts that are repeated throughout the SAC that support Plaintiff's breach claim and the damages sought against the Defendant—American Registry developed Castle Connolly's physical award display/recognition item program (*i.e.*, the "Top Doctor" plaques) [DE 45, ¶12] and Castle Connolly never had such recognition display items to offer to its selected doctors prior to its partnership with the Plaintiff pursuant to the Agreement. [DE 45, ¶13].

9. Seamlessly, after Defendant terminated its business relationship with Plaintiff on September 30, 2021, [Moran Dec., ¶14], Defendant began, without any downtime, to make, offer, and sell a virtually identical plaque program with a new company, Wright's Media. [DE 45, ¶¶ 20, 30, 32–34]; [Moran Dec., ¶¶15–16]. Moreover, although Wright's Media may have been in business for years, based upon the information provided on Wright's Media's webpages pertaining to the services and products offered, it did not make, offer and/or sell personalized recognition plaques for specific, individual award recipients,[3] until after it started its relationship with the Defendant.

10. How else could such a situation *plausibly* occur if not for the Defendant looking under the hood of Plaintiff's proverbial car and then handing the keys over to Wright's Media. [DE 45, ¶¶30–34]. Over the course of years, Defendant had access to **all** of Plaintiff's confidential information and proprietary information, [Moran Dec., ¶¶7, 8, 11, 12], and towards the end of the parties' business relationship, Defendant wanted **even more** of Plaintiff's "secret sauce" by inquiring about the specifications pertaining to Plaintiff's plaques, and requiring this information, along with other financial and sales data, to be provided in a more organized manner, which the Plaintiff gave without issue, unsuspecting that Defendant was going to disclose it to Wright Media's. [Moran Dec., ¶13, Ex. 1].

---

[3] In its Motion to Dismiss, Defendant argues that Wright's Media had offered similar products "before" the parties' Agreement. [DE 51, p. 9]. However, the "visually stunning plaques" that Wright's Media advertises on its webpage are **glass/crystal plaques** (whereas the award recognition displays that were developed by the Plaintiff for the Defendant, and that the Defendant is now offering to sell through Wright's Media are **wood plaques**). *See* Wright's Media, Awards & Display Products, https://www.wrightsmedia.com/content-licensing-solutions/#promotional (last visited October 2, 2023). Moreover, Wright's Media would offer these products to **brands** in order for the **brand** to **promote** such recognition (not to recognize an **individual** recipient of such an award). *See id.*

11. Defendant's tactics to gain Plaintiff's confidential information are further evidenced by the document that Defendant attached to its Motion to Dismiss [DE 51-1][4], which purportedly required Plaintiff to now provide Defendant with **weekly** sales reports under the guise that the purpose for such reports were so that Defendant "does not sell to customers who have already purchased" such a display, "including a plaque." [DE 51-1]. This begs the question as to why Defendant would need to know its **revenue share** or the **production cost** for that purpose. [DE 51-1]. The answer of course is that Defendant would only need to know about its **revenue share** or the **production cost** to learn how the product sells, cost production, price margins, etc. to recreate the same and use as leverage to obtain a better deal with another vendor.

12. The parties' Agreement specifically provides that "***except for breach of a party's obligations…in this Agreement of Confidentiality***" no party shall be liable to the other for the damages listed therein [DE 45-1], because Plaintiff sought it necessary to be rightfully compensated for any unlawful disclosure of its confidential information, especially to a competitor who would clearly benefit from such information and compromise Plaintiff's ability to compete. However, since Defendant knew that it was going to disclose, or was already disclosing, Plaintiff's confidential and proprietary information to third-parties, it sought to protect itself by attempting to drastically amend the limitations of liability provision of the Agreement. [DE 51-1]. This document essentially gives Defendant a free-for-all to breach the Confidentiality clause of the Agreement because Defendant knew that its liability would be capped, and apparently, the Defendant was willing to take the hit.

13. Defendant's main arguments for dismissal are premised upon Plaintoff's purported lack of evidence or specifics to support its well-pled allegations, but at the same time, Defendant is attempting to strong-arm and prevent Plaintiff from obtaining such evidence by seeking a stay of discovery pending resolution of its Motion to Dismiss—the proverbial sword and shield.

14. On the one hand, as for its 12(b)(1) argument, Defendant is arguing, *inter alia*, that Plaintiff purportedly has not provided evidence to support its damages [DE 51, pp. 7–10]—the *sword*—and on the other hand, when Plaintiff has propounded discovery reasonably calculated to lead to the discovery

---

[4] As will be discussed below, the Court should not consider this document in its review of the Motion under Rule 12(b)(1) or 12(b)(6), However, by Plaintiff's referencing to said document in this Response or otherwise, Plaintiff does not waive any argument or defense as to the authenticity or enforceability of such document, nor its admissibility, including, but not limited to, unclean hands, or fraud in the inducement. *See Oceanic Villas, Inc. v. Godson*, 4 So. 2d 689, 690 (Fla. 1941) (Holding that a fraudulent inducement claim cannot be defeated by a contractual agreement unless the contract specifically states a fraud claim is not sufficient to negate the contract.).

of this evidence,[5] Defendant is using its Motion to Dismiss to seek an entire stay of discovery [DE 52]—the *shield*. Same concept applies for Defendant's 12(b)(6) argument that, *inter alia*, the Plaintiff has purportedly not identified the confidential information to support its claim [DE 51, pp. 11–14] (which Plaintiff disputes it is required to do so at this stage of the pleadings but nonetheless has identified [DE 45, ¶¶16, 18, 24]). Indeed, the Plaintiff has propounded discovery directed at this issue[6] which, again, the Defendant has failed to respond to and instead seeks a stay based on the dismissal motions.

15. At this stage in the pleadings, the Court may reasonably infer, based on the well-pled allegations of the SAC [DE 45], which the Court must accept at true, that the Defendant could be held liable for breaching the Agreement by disclosing Plaintiff's Confidential Information to a third-party (Wright's Media) on the simple, unrebutted fact that the Defendant never had a personal physical award/recognition displays to offer for sale to its Top Doctors but-for the Agreement with Plaintiff, [DE 45, ¶13], and now, Plaintiff is seamlessly able to continue to do virtually the same with a different company, without expending the time and costs to develop such a product. [DE 45, ¶¶30–34]. Moreover, Defendant's liability is at least, to a legal certainty, more than the jurisdictional amount-in-controversy. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

16. As such, the Plaintiff has alleged sufficient facts to withstand Defendant's Motion to Dismiss under Rule 12(b)(1) and 12(b)(6).

### III. MEMORANDUM OF LAW

#### a. Standard on a Motion to Dismiss.

17. Rule 8 of the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) (quoting Fed.R.Civ.P. 8(a)(2)). To survive a motion to dismiss, a complaint need only contain sufficient factual allegations which, when accepted as true, "state[s] a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570; *see also Lewis v. Mercedes-Benz USA, LLC*, 530 F. Supp. 3d 1183, 1214 (S.D. Fla. 2021) ("[T]he plaintiff should receive the benefit of all favorable inferences that can be drawn from the facts alleged."). "**A claim has facial plausibility when the plaintiff pleads**

---

[5] For example, Request for Production #17 requests for the Defendant to produce "[a]ll financial documents relating to revenues derived from www.castleconnollyplaques.com since inception, including but not limited to documents sufficient to show Your actual and expected revenues, gross profits, net profits, and on a monthly, quarterly or annual basis since inception."

[6] For example, Interrogatory #6 requests for the Defendant to "[d]escribe in detail any discussions between You and any third party, including Wright's Media, Inc. relating to the preparations or plans to offer achievement recognition items via the website hosted at www.castleconnollyplaques.com...."

***factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.***" *Iqbal*, 556 U.S. at 678 ("The plausibility standard is not akin to a 'probability requirement.'") (emphasis added); *see also Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295–96 (11th Cir. 2007) ("The Court has instructed us that the rule 'does not impose a probability requirement at the pleading stage,' but instead **'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of' the necessary element.**") (quoting *Twombly*, 550 U.S. at 556) (emphasis added).

18. At this stage, Plaintiff does not need to prove its case on the pleadings. *See Twombly*, 550 U.S. at 585 ("[A] Rule 12(b)(6) is not an appropriate device for testing the truth of what is asserted ***or for determining whether a plaintiff has any evidence to back up what is in the complaint.***") (emphasis added). The SAC must merely provide enough factual allegations to raise a reasonable inference, and thus a plausible claim, that, accepting Plaintiff's allegations as true, Defendant breached the parties' Agreement by disclosing Plaintiff's confidential and proprietary information. When the SAC is reviewed through this lens, Plaintiff has stated a claim upon which relief can be granted, and consequently, Defendant's Motion to Dismiss must be denied.

      b. <u>**American Registry has Established Diversity Jurisdiction for its Contract Claim.**</u>

19. Plaintiff has invoked the Court's diversity jurisdiction[7] for its breach of contract claim. [DE 45, ¶¶4–5]. "To invoke a federal court's diversity jurisdiction, a plaintiff must claim, among other things, that the amount in controversy exceeds $75,000." *Fastcase, Inc. v. Lawriter, LLC*, 907 F.3d 1335, 1342 (11th Cir. 2018) ("Ordinarily, ***a plaintiff need only plead an amount sufficient*** to satisfy the amount-in-controversy requirement ***in good faith***. The plaintiff's good-faith pleading will be second guessed ***only if it appears to a legal certainty that the claim is really for less*** than the jurisdictional amount.") (internal citations omitted) (emphasis added).

20. Plaintiff has pled an amount in good faith sufficient to satisfy the amount-in-controversy requirement, and the Court should not second guess the Plaintiff's good-faith pleading. As such, Defendant's Motion to Dismiss Plaintiff's SAC pursuant to Rule 12(b)(1) must be denied.

---

[7] Plaintiff filed a Motion to Amend by Interlineation the SAC [DE 60] based upon Plaintiff's recent review of the Plaintiff's operating agreement that provides that the members are (i) the Moran Family Trust dated September 28, 2017 (instead of Michael Moran, individually), (ii) the Matthew Benkendorf Revocable Trust dated February 11, 2019 (instead of Matthew Benkendorf, individually), and (iii) Grant Fitzwilliam. [Moran Dec. ¶¶3–4]. Plaintiff also filed its Corporate Disclosure Statement [DE 59] that discloses the members of Plaintiff, and their corresponding domicile for purposes of determining Plaintiff's citizenship, which has been and is Florida, as pled numerous times.

### *i. Defendant's Facial—Not Factual—Attack Shows That The Court Has Subject Matter Jurisdiction Over Plaintiff's Second Amended Complaint.*

21. Attacks on subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1) come in two forms—facial or factual attacks. "Facial attacks on the complaint require the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion. Factual attacks, on the other hand, challenge the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Lawrence v. Dunbar*, 919 F.2d 1525, 1528–29 (11th Cir. 1990) (internal quotations and citations omitted). Indeed, "[t]he Court seems to enjoy greater discretion on a factual attack to subject-matter jurisdiction." *City of Pembroke Pines, Fla. v. Fed. Emergency Mgmt. Agency*, 2021 WL 48950 (S.D. Fla. Jan. 4, 2021). Whereas, on facial attacks, a plaintiff is afforded "the similar safeguards as those present under Rule 12(b)(6). *Id.* Here, Defendant has made a facial attack on the *sufficiency* of the Plaintiff's damages allegations and/or otherwise denied Plaintiff's allegations as to the same.

22. Defendant shapes its attack on the SAC's subject matter jurisdiction as a factual attack because it evidently wants the Court to use the document that Defendant has improperly attached to its Motion [DE 51-1] in determining whether the amount-in-controversy is met which purports to cap the Plaintiff's recovery. However, to the extent that the Court considers such document to rule on Defendant's Rule 12(b)(1) motion (which is should not[8]), Plaintiff's damages pursuant to said document would nonetheless exceed $75,000.

23. Plaintiff's claim regarding Defendant's breach arose subsequent to the termination of the Agreement on September 30, 2021, although the breach preceded the termination. According to the payment terms of the Agreement [DE 45-1], Plaintiff paid Defendant approximately $170,000 in 2021 [Moran Dec., ¶24], which said payment amount is the "greater of" $75,000. *See* [DE 51-1] ("The maximum liability of either party for any claim arising in connection with this agreement will not exceed **the greater of** the amounts paid or payable under the Agreement by [Plaintiff] in the…12 months preceding the date upon which such claim arose or …$75,000.").

24. Furthermore, Defendant's Motion lacks any substantiating facts or details for the belated introduction of this document, which, in the words of Defendant [DE 51, p. 8], appears to have been

---

[8] The Court should also not consider the attached document as it is not central to Plaintiff's claim because it is not necessary to establish its breach claim since the provision at issue is in the Agreement attached to the SAC and any damages calculations based on profits, royalties or otherwise would be derived from the computation of commissions set forth in the Agreement that were to be paid by Plaintiff to the Defendant [DE 45-1]. *See Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005).

"seemingly pulled out of thin air.[9]" This is clearly an attempt by Defendant to surprise or ambush Plaintiff, as this marks the first time since Plaintiff filed this lawsuit on April 13, 2023 [DE 1], that Defendant has sought to utilize such a document to support its Rule 12(b)(1) argument or otherwise:

    a) In neither of its two prior motions to dismiss has the Defendant mentioned or attached said document. *See e.g.*, [DE 16]; [DE 27].

    b) Notably, Defendant's previous motion to dismiss the Amended Complaint [DE 27] that was ruled upon by the Court [DE 44], Defendant explicitly claimed that "**Castle Connolly is unaware of any basis for alleging damages reaching the jurisdictional minimum**." [DE 27, p. 17] (emphasis added).

    c) Defendant failed to disclose this document in its Rule 26 disclosure that required Defendant to disclose all documents in its possession, custody, or control that it may use to support it defenses, which to date Defendant has not yet amended to include same. A copy of Defendant's Rule 26 Disclosures is attached as **Exhibit B.**

25. Nonetheless, because the Defendant's attack on jurisdiction is facial, the Court must consider the Plaintiff's allegations to be true. *See Lawrence*, 919 F,2d at 1529. In the SAC, Plaintiff pleads that the physical award/recognition display program that Plaintiff developed and implemented for the Defendant generated millions of dollars in profit for the Defendant [DE 45, ¶¶5, 9], which the Defendant continues to reap via Wright's Media who is now producing and selling virtually the same award/recognition displays for the Defendant. [DE 45, ¶6]. Plaintiff further alleges that as a result of Defendant's material breach of the Agreement, Plaintiff has suffered damages that include, without limitation, lost profits[10] that Plaintiff has claimed in good faith to be about $375,000 per year [Moran Dec., ¶18], and which is continuing in nature as long as Defendant continues to breach the Agreement, as well as other damages exceeding $75,000.00, to be determined at trial. [DE 45, p. 10]; *See Livneh v. Bovie Med. Corp.*, 2013 WL 3832408, at *3 (M.D. Fla. July 23, 2013) ("Rule 8 of the Federal Rules of

---

[9] Pursuant to well-established law, and as a matter of fairness and procedural equity, the Court should not allow the Defendant to "sandbag" the Plaintiff by presenting any new factual averments or evidence in a belated attempt to justify why it failed to disclose this document in its earlier motions to dismiss or in its Rule 26 Disclosure. *See Zurich Am. Ins. Co. v. Nat'l Specialty Ins. Co.*, 246 F. Supp. 3d 1347, 1352, n.3 (S.D. Fla. 2017) ("A reply…may not raise new arguments or evidence, **particularly where the evidence was available when the underlying motion was filed and the movant was aware (or should have been aware) of the necessity of the evidence.**").

[10] Plaintiff's lost profit computation is based upon its estimated loss revenue of approximately $750,000.00/year from its sales throughout the years associated with the Defendant's physical award/recognition display program (*i.e.*, the plaques). [Moran Dec., ¶18]. *See Mfg. Rsch. Corp. v. Greenlee Tool Co.*, 693 F.2d 1037, 1042 (11th Cir. 1982) ("Comparison of sales before the [breach] with sales afterwards is one of the generally recognized methods of proving lost profits.").

Civil Procedure does not require specificity or identification of components regarding a demand for relief sought."). The Court must take these as true.

26. However, if the Court believes that the jurisdictional amount in controversy is not facially apparent from the SAC (which it is), the Court may use "deduction, inference, or other extrapolation of the amount in controversy" and may consider facts alleged in the complaint…non-sworn letters submitted to the court, or other summary judgment type evidence that may reveal that the amount in controversy requirement is satisfied." *Dibble v. Avrich*, 2014 WL 5305468, at *5 (S.D. Fla. Oct. 15, 2014) ("Although Plaintiff bears the burden of establishing the amount in-controversy requirement, **this burden is not onerous. It merely requires that Plaintiff convince this Court that it is more likely than not that the pleading satisfies the jurisdictional minimum.**"). Here, the Court is not left to speculate as to how the amount-in-controversy will be met based as Plaintiff's well-pled allegations in the SAC, and the declaration of Michael Moran filed in support of this Response, demonstrate that it is more likely than not the SAC satisfies the jurisdictional minimum.

27. In the SAC, Plaintiff sufficiently alleged that Defendant disclosed Plaintiff's confidential and propriety information to Wright's Media, Inc. [DE 45, ¶¶ 16, 18, 20–21, 24, 27, 30]; [Moran Dec. ¶¶7, 11–12] based upon that Wright's Media, *seemingly overnight*, produced a nearly identical program for Defendant to offer and sell the personal physical award displays *(i.e.*, the plaques) as the one that Plaintiff had developed, produced and sold for the Defendant. [DE 45, ¶¶30–34]; [Moran Dec. ¶15]. This program is not something that Defendant, who had never made or sold such a plaque to recognize its Top Doctors prior to the Agreement with Plaintiff [DE 45, ¶13] could have done within a year's time. [Moran Dec., ¶¶10, 16–17].

28. The Court can reasonably deduce and/or infer that the confidential and propriety information of the Plaintiff that the Defendant disclosed to Wright's Media is worth far in excess of $75,000.00 since Defendant *did not* have to incur any of the significant time or expenses that Plaintiff incurred to develop, build, and refine its business throughout the years (prior to the Agreement with the Defendant) in order to successfully offer and sell the personalized physical award/recognition displays (*i.e.*, Plaintiff's confidential and proprietary information [DE 45, ¶¶13, 16])—all of which was disclosed to Defendant [DE 45, ¶¶16, 18, 24], and which Defendant in turn, disclosed to Wright's Media in order to continue its business. *See Med. Store, Inc. v. AIG Claim Servs., Inc.*, 2003 WL 25669175, at *6 (S.D. Fla. Oct. 17, 2003) (noting that one measure of damages is the savings to the defendant that are attributable to the use of the plaintiff's confidential information, which compares the costs to the defendant of achieving the same result with and without the improper use of plaintiff's confidential information and awards the difference to the plaintiff).

29. Thus, the costs that Defendant would have incurred to independently develop, produce, and sell its physical award/recognition displays for its Top Doctors, without the benefit of Plaintiff's confidential and proprietary information, *see supra* ¶4(b)(i), *plausibly* exceeds $75,000.00. This is particularly credible considering Plaintiff's significant investment of time and resources in the meticulous crafting, development, and enhancement of its business operations "based upon years of experience and thorough market research to offer and sell the customized award displays." [DE 45, ¶16]; [Moran Dec., ¶¶6–7].

### ii. Plaintiff Has Claimed A Sufficient Sum In Good Faith As Its Damages Due To The Defendant's Breach Of The Agreement.

30. Defendant contends that Plaintiff's allegation that Plaintiff's lost profits damages, which are "upon information and belief," $375,000.00 a year, is improper. [DE 51, p. 7]. Defendant's contention, however, is based on its misplaced reliance on a litany of distinguishable cases that jurisdictional allegations of the amount in controversy cannot be made "on information and belief." [DE 51, p. 7]. For example, in *JML Energy Res., LLC v. Ryder Truck Rental Inc.*, 2021 WL 1837795, at *1, n.2 (S.D. Fla. May 7, 2021), the plaintiff had alleged the defendant's citizenship upon information and belief—not the amount in controversy. Similarly, in *Admiral Ins. Co. v. VPRART, LLC*, 2021 WL 1318223, at *1, n.1 (S.D. Fla. Apr. 7, 2021), the plaintiff had alleged the defendant's citizenship upon information and belief—not the amount in controversy—and failed to allege the defendant entity's members. In *Willingham v. Callaway*, 2020 WL 1530738, at *3 (M.D. Fla. Mar. 31, 2020), a case based on a notice of removal, the defendant alleged that "upon information and believe, plaintiff seeks damages that exceed $75,000," but the court determined that it was insufficient because the complaint was devoid of any facts pertaining to the plaintiff's injuries or medical care to support such amount. In *Wilkins v. Stapleton*, 2017 WL 11219132, at *1 (M.D. Fla. Aug. 1, 2017), the plaintiff failed to allege proper citizenship of the defendants, instead pleading the defendants' residency, and the court dismissed the complaint for being a shotgun pleading.[11]

31. Moreover, contrary to Defendant's contentions [DE 51, p. 8], Plaintiff's claim is based on recognizable and continuing damages. As discussed *supra*, Plaintiff pleads that as a result of Defendant's material breach of the Partnership Agreement, Plaintiff has suffered damages that

---

[11] Defendant also cites to *Storms v. Haugland Energy Grp., LLC*, 2018 WL 4347603, at *3 (S.D. Fla. Aug. 17, 2018), but the court there found that *Iqbal* and *Twonbly* applies to **personal** jurisdictional allegations, and noted that it "has not found any reported decisions in this District or in the Eleventh Circuit addressing whether *Iqbal* and *Twonbly* applied to the requirement under Rule 8(a)(1) that the complaint contain 'a short and plain statement of the grounds for the court's jurisdiction.'" Defendant also cites to *Havron v. AT & T, Inc.*, 2009 WL 5030760, at *2 (S.D. Ill. Dec. 16, 2009), which is a Southern District of Illinois case and thus, non-binding on this Court.

include, without limitation, lost profits that Plaintiff has claimed in good faith to be about $375,000 per year based upon information available to it, [Moran Dec., ¶18], and which said damages are recognizably continuing in nature as long as Defendant continues to breach the Agreement. [DE 45, p. 10]. *See Livneh*, 2013 WL 3832408, at *3; *see also Watts*, 495 F.3d at 1295–96 ("It is sufficient if the complaint succeeds in 'identifying facts that are suggestive enough to render [the element] plausible.'") (quoting *Twombly*, 550 U.S. at 556) (alternation in the origination).

32. Defendant also erroneously contends that Plaintiff has failed to identify the damages tied to Defendant's breach. [DE 51, p. 9]. However, Plaintiff has identified that the damages it has suffered (*i.e.*, reduced value of its products [DE 45, ¶36], lost profits, loss opportunity and other expectation and/or consequential damages exceeding $75,000 (to be determined at trial) [DE 45, p. 10], which remain ongoing, are the direct result of the Defendant's breach of the Agreement. *See PartyLite Gifts, Inc. v. Macmillan*, 2010 WL 5209364, at *4 (M.D. Fla. Nov. 24, 2010), r*eport and recommendation adopted*, 2010 WL 5209362 (M.D. Fla. Dec. 16, 2010) (Where the complaint alleged that the breach has caused damage to the plaintiff's sales force, and which breaches are ongoing and have caused and will cause damage to the plaintiff in an amount to be determined at trial "but in no event less than $75,000," the court in "[c]onsidering the allegations as a whole," held that plaintiff "has stated a plausible claim that it was damaged by [d]efendant's breach").

33. Defendant also contends that, because Plaintiff has failed to identify with particularity the confidential information, it "makes it even more difficult to see how any alleged damages are tied to the alleged breach." [DE 51, p. 10]. However, as detailed in Plaintiff's Response to Defendant's Motion to Stay [DE 54], Defendant has failed to produce any document or respond to any discovery requests that Plaintiff has sought directed to its breach of claim via its unilateral grant of a stay of discovery. Nonetheless, as discussed *supra*, Plaintiff has alleged sufficient facts to support that it has suffered damages as a result of Defendant's breach of the Agreement, and Defendant's argument that Plaintiff's allegations "are not plausible and they bely any 'good faith,'"[DE 51, p. 9], is nothing more than a denial.

34. Further, Plaintiff has also pled, in its prayer for relief, "other expectation and/or consequential damages exceeding $75,000.00,[12]" which are to be determined at trial. This Court has found that the damages recoverable for a breach of confidentiality agreement include actual loss for the disclosure

---

[12] Plaintiff amended its Rule 26 disclosure which amended its computation of damages to solely those damages stemming from Defendant's breach since the Court dismissed Plaintiff's patent claims for improper venue [DE 44], which includes lost profits and a 5% royalty fee. [Moran Dec., ¶¶19–20]. A copy of Plaintiff's amended Rule 26 disclosure is attached as **Exhibit C.**

of the confidential information, the unjust enrichment caused by such disclosure that is not taken into account when computing actual loss, reasonable royalty due to the unauthorized disclosure of the confidential information, and, the savings to the Defendant attributable to the use of Plaintiff's confidential information, which difference is awarded to the Plaintiff. *See Med. Store,* 2003 WL 25669175, at *5[13]. These figures require discovery to take place, which the Defendant has impeded by seeking a stay of discovery [DE 54]. Nonetheless, any such damages that Plaintiff is seeking, including the identified lost profits, is sufficient to show that its damages, more likely than not, satisfy the jurisdictional threshold.

35. Defendant's attack on the factual accuracy of Plaintiff's damages allegations[14], rather than the sufficiency of the alleged facts in the complaint, is misplaced at the motion to dismiss stage.

### iii. Plaintiff's Damages Still Exceed The Jurisdiction Amount Even If There Are Any Purported Restriction On A Confidentiality Clause.

36. Defendant further contends that Plaintiff's damages allegations are "more implausible given the limitations on claims seeking enforcement of a restrictive covenant." [DE 51, p. 10]. However, Defendant is merely arguing that the confidentiality clause of the Agreement is unreasonable, and whether a restrictive covenant is reasonable is a question of fact, which cannot be determined at the motion to dismiss stage. *See PartyLite*, 2010 WL 5209364, at ¶3 (citing *Proudfoot Consulting Co. v. Gordon*, 576 F.3d 1223, 1237 (11th Cir. 2009). Nonetheless, any purported limitation is irrelevant to the measure of damages suffered by the Plaintiff as a result of Defendant's breach, especially when Defendant did not even comply with any such 2-year limit because Defendant breached the Agreement within such time period. *See Med. Store*, 2003 WL 25669175, at *4 (Rejecting that the damages should be limited to the contractual two-year term of the confidentiality agreement, since the defendant breached the two-year clause that it sought to enforce.).

### iv. Plaintiff Is Seeking Permanent Injunctive Relief That Would Exceed The Jurisdictional Amount—Not Restitution.

37. Lastly, Defendant argues that Plaintiff did not attribute any dollar value to its purported

---

[13] In *Med. Store*, this Court held that although a breach of confidentiality agreement and misappropriations of trade secrets are two separate and distinct claims, thus, requiring different sets of proof, "there is no logical basis to distinguish the nature or measure of damages permitted under either the contract remedy or the statutory remedy." 2003 WL 25669175 at *6.

[14] Defendant argues that Plaintiff's allegations are "particularly implausible" given the (i) improper extrinsic document that Defendant attached to its Motion purporting to limit the parties' liability under the Agreement—which is outside the pleading and cannot otherwise be relied upon by the Court to determine the sufficiency of Plaintiff's allegations; and (ii) the "availability of a competing vendor," which was only made possible as a result of Defendant's disclosure of Plaintiff's confidential and proprietary information to such vendor.

demand for restitution. [DE 51, p. 10]. However, in Plaintiff's "Prayer for Relief," Plaintiff does not seek such relief. [DE 45, p. 10]. Plaintiff does seek "an order of permanent injunction which enjoins Defendant from accessing, disseminating, or otherwise using [Plaintiff's] confidential information under the Partnership Agreement." [DE 45, p. 10]. *See Federated Mut. Ins. Co. v. McKinnon Motors, LLC*, 329 F.3d 805, 807 (11th Cir. 2003) ("When a plaintiff seeks injunctive or declaratory relief, the amount in controversy is the monetary value of the object of the litigation from the plaintiff's perspective.").

38. Thus, the value of the requested injunctive relief is the monetary value of the benefit that would flow to the Plaintiff if the injunction were granted, *i.e.*, the amount of profits on sales that were previously diverted from the Plaintiff due to Defendant's disclosure of its confidential information to another vendor. Based on Plaintiff's well-pled allegations that the Court must take as true, it is plausible that the monetary value of the benefit that would flow to the Plaintiff if Defendant were enjoined from using Plaintiff's confidential information to sell the virtually identical award display items via Wright's Media would, more likely than not, exceed $75,000.

### c. American Registry Has Plausibly Pled A Breach Of Contract.

39. The pleading standard under Rule 8(a)(2) does not require "detailed factual allegations." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555); s*ee also Ancata v. Prison Health Services, Inc.*, 769 F.2d 700, 703 (11th Cir. 1985) (threshold is "exceedingly low"). Under Florida law, a claim for breach of contract only requires proof of three elements: (1) the existence of a valid contract; (2) a material breach; and (3) damages. *See NPA Assocs., LLC v. Lakeside Portfolio Mgmt., LLC*, 2014 WL 714812, at *5 (S.D. Fla. Feb. 22, 2014) ("Confidentiality agreements are contracts; thus, the elements [p]laintiff must prove for breach of the confidentiality are the same as…for breach of contract.").

40. Here, Plaintiff has sufficiently pled a breach of contract claim in the SAC:

a) Paragraph 23 alleges the existence of a valid contract, *i.e.*, the Agreement, [DE 45, ¶23];

b) Paragraph 35 alleges that Defendant materially breached the Agreement, [DE 45, ¶35] by, *inter alia*, disclosing Plaintiff's confidential and/or propriety information and documents to Wrights Media, as well as utilizing Plaintiff's confidential marketing and sales techniques to market, in conjunction with a third-party (Wright's Media), the award display program that Plaintiff developed under the terms of the confidentiality terms of the Agreement, [DE 45, ¶¶27, 30, 32–34], and

c) Paragraph 36 alleges that Plaintiff suffered damages as a result of the foregoing breaches by Defendant, [DE 45, ¶36].

41. As such, Plaintiff has sufficiently alleged more than enough to easily survive a motion to dismiss, and consequently, the Court should deny Defendant's Motion to Dismiss under Rule

12(b)(6). *See NPA Assocs.,* 2014 WL 714812, at *6 (holding that the plaintiffs have alleged the existence of confidentiality agreements, that defendants have disseminated confidential information subject to the agreement, and that plaintiffs were damaged as a result of the same.).

42. Nonetheless, Defendant contends that Plaintiff has failed to plausibly allege any acts by [Defendant] amounting to a breach of the confidentiality clause," and that Plaintiff "does not point to anything 'confidential' that was 'disclosed' by [Defendant] to Wright['s Media] in violation of the Agreement." [DE 51, p. 11]. However, Defendant's contention is simply a denial of Plaintiff's well-pled allegations.

### i. *Plaintiff's Confidential and Proprietary Information Encompasses the Specifications for Creation of the Recognition Items, the Creation and Research of the Carefully Worded Marketing Emails, its Business Operations and Methodologies and Trade Secrets.*

43. Defendant first argues that the physical properties of the plaques are not confidential due to their public display. [DE 51, p. 11]. However, this interpretation misconstrues the nature of Plaintiff's confidentiality claims. As Plaintiff repeatedly alleges in the SAC, which Defendant has not rebutted, Plaintiff not only devised but also executed Defendant's complete physical awards display program. [DE 45, ¶¶11–12]. This program, notably, was entirely absent before Plaintiff's involvement [DE 45, ¶13], and, as such, Plaintiff was responsible for determining the specifications of these physical award displays. [Moran Dec., ¶10]. These specifications encompassed various factors that include, but are not limited to, the size, thickness, shape, orientation, and more of the plaques. They were the result of Plaintiff's confidential and proprietary information, the culmination of extensive research, market analysis, and substantial investments. [Moran Dec., ¶¶6–7, 11–12]. It is not just one-piece of information or the other that is confidential, but it is the cumulative effect of all of it together that comprises Plaintiff's confidential and proprietary information. [Moran Dec., ¶7].

44. Defendant was neither aware of nor privy to this valuable information until the formation of its partnership with Plaintiff and Plaintiff's subsequent disclosure of its confidential and proprietary information pursuant to the Agreement. Indeed, if these physical attributes were as public and well-known as Defendant implies, Defendant would not have needed to obtain Plaintiff's specifications for the plaques, [Moran Dec., ¶13, Ex. 1] or required Plaintiff to divulge detailed proprietary information regarding the production and sales of these plaques in a weekly report. [DE 51-1].

45. Defendant's argument is further flawed. To provide a simple parallel, consider the Big Mac™: while its physical appearance and the ingredients are visible and on "display," the precise formulation and recipe details, such as the exact ingredient proportion, condiments, and seasoning, are confidential and constitute McDonald's proprietary information. The same holds true for the plaques the Plaintiff

specifically developed and designed for the Defendant. These plaques were "displayed" only by the recipients of such awards, but the precise construction, specifications, and packaging remained confidential proprietary information of the Plaintiff.

46. Moreover, Defendant seems to erroneously apply the standard for pleading misappropriation of trade secrets to Plaintiff's breach of contract claim by requiring Plaintiff to specify the particular confidential information that Defendant disclosed. Indeed, to support this argument, Defendant cleverly relies first on *Am. Registry, LLC v. Hanaw*, 2013 6332971, at *2 (M.D. Fla. Dec. 5, 2013), which case involved a former sales agent of the plaintiff, and is readily distinguishable since here, Defendant was not a sales agent of the Plaintiff, but rather Plaintiff was the "exclusive third-party provider authorized" by the Defendant to produce and sell the award displays for the Defendant. [DE 45-1].

47. Moreover, the *Hanaw* Court dismissed the complaint with leave to amend because the plaintiff did not provide factual content to allow the court "to reasonably infer that" the defendant was "using the confidential information." *See id.* Here, the SAC alleges that Defendant, prior to the Agreement with Plaintiff never had a physical display award program, [DE 45, ¶13], that Plaintiff developed and implemented such a program for the Defendant, [DE 45, ¶11–12], and that now Defendant is offering for sell the virtually identical physical recognition displays that Plaintiff curated for the Defendant, but with another vendor [DE 45, ¶¶30–34]. Thus, the Court could reasonably infer based on the well-pled allegations that the Court must take as true, that Defendant did disclose and/or use Plaintiff's confidential information in breach of the Agreement.

48. Defendant further relies on *DeRubeis v. Witten Techs., Inc.*, 244 F.R.D. 676, 681 (N.D. Ga. 2007), which is non-binding on this Court, and is a case where the issue before the court was a motion to compel discovery on a claim for misappropriation of trade secrets. Defendant also cites to *SeaMiles*, which is equally misplaced, as *SeaMiles* dealt with an *ex-parte* preliminary injunction, which the court denied because, *inter alia*, plaintiff's "business model" was not a trade secret and therefore failed to meet the requirements for a preliminary injunction. *SeaMiles, LLC v. Carnival Corp.*, 2009 WL 10667772, at *7–8 (S.D. Fla. Nov. 23, 2009). *SeaMiles* is even more distinguishable because here, Plaintiff did seek to protect its confidential and proprietary information, that is not commonly known in the industry or otherwise publicly available, by expressly providing for it in the Confidentiality provision of the Agreement, and which the Defendant agreed not to disclose. [DE 45-1]. *See Concept, Inc. v. Thermotemp, Inc.*, 553 So.2d 1325, 1327 (Fla. 2d DCA 1989) ("Parties are entitled to enter into contracts in which they agree not to use or disclose confidential information, even though the information may not qualify as a trade secret in a legal sense.").

49. Defendant further argues that the identical marketing emails created by the Plaintiff for Defendant, and which the Defendant is now sending to its award recipients, are not confidential. [DE 51, p. 13]. Again, Defendant misinterprets what Plaintiff has asserted as confidential regarding these emails. It's not the emails by themselves that are of import, rather these emails were crafted using Plaintiff's confidential and proprietary information as they were specifically worded to capture recipients' attention and encourage them to purchase the physical award/recognition displays, and Plaintiff invested time and resources to refine its marketing and sales strategies. [DE 45, ¶¶16, 32]; [Moran Dec. ¶¶6–7]. Defendant also claims that Plaintiff failed to identify specific details of Plaintiff's business operations and intricate methodologies that Defendant disclosed. *But see* [DE 45, ¶¶ 16, 18, 24]; *see also* [Moran Dec., ¶16].

50. Plaintiff has met the pleading requirements for its breach of contract claim under Rule 8, and the Court should deny Defendant's Motion. Plaintiff's SAC provides greater factual specificity than the *Twombly* plaintiffs (and, by extension, a more plausible claim), as detailed above. Defendant's argument is merely an improper denial of Plaintiff's well-pled allegations pertaining to the confidentiality of the information that Defendant disclosed to Wright's Media or others.

### d. American Registry Has Plausibly Pled Damages.

51. It is axiomatic that damages are an element of any claim for breach of contract. *See Bland v. Freightliner*, 206 F. Supp. 2d 1202, 1210 (M.D. Fla. 2002). Here, and as discussed at length *supra*, Plaintiff has plausibly pled that as a result of Defendant's material breach of the confidentiality provision of the Agreement, which breaches are detailed in the SAC [DE ¶¶27, 30–34], Plaintiff has suffered, and will continue to suffer, damages. [DE 45, p. 10]. Plaintiff has pled, for purposes of withstanding a motion to dismiss, that the damages it has suffered were a reasonable and plausible consequence of the Defendant's breach(es) of the Agreement.

### IV.  CONCLUSION

Based upon the foregoing legal arguments and case law, Defendant's Motion to Dismiss should be denied in its entirety as Plaintiff has sufficiently alleged that the Cout has subject matter jurisdiction over Plaintiff's breach of contract claim and Plaintiff has sufficiently pled a claim for breach of contract. Defendant should, therefore, be required to file its Answer to the Second Amended Complaint by a date certain as established by this Court's Order.

**WHEREFORE**, Plaintiff respectfully requests that Defendant's Motion to Dismiss be denied, and that the Court enter such further relief that is just and proper.

Dated: October 4, 2023.

Respectfully Submitted,

s/Adam J. Steinberg
Adam J. Steinberg, Esq.
Florida Bar No.: 389579
E-mail:  adam@adamsteinberglaw.com
Vanessa Fonts, Esq.
Florida Bar No. 1015404
E-mail: vanessa@adamsteinberglaw.com
LAW OFFICES OF ADAM J. STEINBERG, P.A.
200 S. Andrews Avenue, Ste. 903
Ft. Lauderdale, FL  33301
Telephone:  954-548-3357
Facsimile:   888-222-4192
Attorney for Plaintiff
[American Registry, LLC]

And

Meredith Frank Mendez, Esq.
Florida Bar No. 502235
E-mail:  mmendez@malloylaw.com
Jonathan Woodard, Esq.
Florida Bar. No. 96553
Email:  jwoodard@malloylaw.com
W. John Eagan
Florida Bar No. 105101
Email: johneagan@malloylaw.com
Malloy & Malloy, P.L.
2800 S.W. Third Avenue
Miami, Florida 33129
Telephone:  305-858-8000
Facsimile:   305-858-0008
Attorney for Plaintiff
[American Registry, LLC]

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed this 4th day of October 2023, using the Court's CM/ECF filing system which will send notice of the same to all counsel record.

By:    /s/   Adam J. Steinberg
Adam J. Steinberg, Esq.
Florida Bar No. 389579